# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **CELESTINE MARCH-CARNEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STEEL WORKERS LOCAL** | ) | **Civil Action No. 3:04-0116** |
| **1055 ASSOCIATION, INC., UNITED** | ) | **Judge Campbell / Knowles** |
| **STEEL WORKERS OF AMERICA,** | ) | |
| **and BRIDGESTONE / FIRESTONE** | ) | |
| **NORTH AMERICAN TIRE, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

Presently pending before the Court are a Motion for Summary Judgment filed by

Defendant Bridgestone / Firestone North American Tire, LLC ("Bridgestone") (Docket Entry

No. 62), and a Motion for Summary Judgment filed by Defendants United Steelworkers Local

1055 Association ("Local") and United Steelworkers of America ("USW") (Docket Entry No.

80).[1]  In support of its Motion for Summary Judgment, Defendant Bridgestone has

contemporaneously filed a Memorandum of Law (Docket Entry No. 63), a Statement of

Undisputed Material Facts (Docket Entry No. 64), an Appendix of Exhibits (Docket Entry No

65), and the Declarations with Exhibits of Mr. Roger Smith, former Labor Relations Manager for

---

[1] Also pending before the Court is a Motion to Dismiss filed by Defendant Bridgestone.
Docket Entry No. 50.  Defendant's Motion to Dismiss will be addressed in a separate Report and
Recommendation.

1

Defendant's LaVergne, Tennessee manufacturing plant (Docket Entry No. 66), and Ms. Donice Cortez, former Labor Relations Specialist for Defendant's LaVergne, Tennessee manufacturing plant (Docket Entry No. 67). In support of their Motion for Summary Judgment, Defendants Local and USW have contemporaneously filed a Memorandum of Law (Docket Entry No. 81), and a Statement of Undisputed Material Facts with Exhibits (Docket Entry No. 62).

Plaintiff has filed a Response to each Motion for Summary Judgment. Docket Entry Nos. 71, 86. Plaintiff has additionally filed supporting Memoranda of Law (Docket Entry Nos. 72, 82), and a Response to each Statement of Undisputed Facts (Docket Entry Nos. 73, 88). With regard to Defendant Bridgestone's Motion for Summary Judgment, Plaintiff has also filed an Appendix of Exhibits (Docket Entry No. 75), and has asserted additional facts which she contends are undisputed (*see* Docket Entry No. 73). With regard to Defendants Local and USW's Motion for Summary Judgment, Plaintiff has filed an Appendix of Exhibits (Docket Entry No. 91), and her Affidavit (Docket Entry No. 89), as well as the Affidavit of her counsel, Mr. Charles Mayfield (Docket Entry No. 90).

Defendants have each filed a Reply to Plaintiff's Response (Docket Entry Nos. 77, 94), as well as a response to Plaintiff's additionally asserted undisputed facts (Docket Entry Nos. 78, 95).

Plaintiff, an African-American female, filed her original Complaint on February 12, 2004, alleging unlawful discrimination and retaliation in employment based on sex and race in violation of 42 U.S.C. § 2000e *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1981(a), the Civil Rights Act of 1866. Docket Entry No. 1. Plaintiff's Complaint sets out facts regarding two different incidents, one that occurred in February 2000

and another that occurred in November 2002. Because Plaintiff has sued three different Defendants, alleging two different sets of circumstances, and setting forth three different legal theories, it is somewhat difficult to keep straight exactly who is being sued for what and under which theory.

Plaintiff avers that, in late February 2000, she was harassed by a fellow Bridgestone employee against whom she had an Order of Protection. At that time, there was a physical altercation between Plaintiff and the other employee. She reported this harassment to security, who responded, and who escorted her off the premises. Security also advised her to report the incident to Defendant Bridgestone's Human Resources department, but Defendant Local (of which both Defendant and the other employee were members) attempted to discourage her from filing a complaint with Defendant Bridgestone. She nonetheless provided a written statement to Defendant Bridgestone regarding the incident, and Defendant Bridgestone fired the harassing employee. Defendant Local assisted the harassing employee with filing a grievance regarding his termination, and Defendant Bridgestone subsequently rehired the harassing employee. *Id.* In early March 2000, Defendant Bridgestone suspended Plaintiff without pay for two days, then later imposed a disciplinary action upon her referred to as a "conditional." *Id.* One of the key provisions of the "conditional" was that Plaintiff could be terminated for "any verbal or physical altercation." The "conditional" did not specify any durational limitation.

Plaintiff contends that, in November 2002, she was detained at the vehicle entrance of the Bridgestone facility where she worked. She was ordered by the security guard to leave the premises, and she ultimately complied with the security guard's order to leave. She subsequently had a meeting with Defendant Bridgestone's Human Resources department to

3

discuss this incident, but she was not asked to provide a written statement concerning the incident. None of Defendant Local's representatives attempted to ensure that she would be able to provide, or that Defendant Bridgestone would accept, a written statement from Plaintiff. *Id.* Plaintiff was again suspended without pay for two days and was subsequently terminated from Defendant's employ. *Id.*

Plaintiff filed a grievance with Defendant Local regarding her termination. She discussed her termination with Defendant Local, and she then contacted Defendant USW. After she contacted Defendant USW, however, Defendant Local ceased its activity concerning her grievance, and later withdrew it. *Id.*

Plaintiff avers that Defendant Local had provided representation to others who were challenging their "Conditions of Employment" or challenging their suspensions, but did not assist her, that she was suspended without pay, but that others were not, and that Defendant Local was obligated to represent her fairly in disciplinary matters, including accepting and pursuing grievances. *Id.*

Plaintiff seeks compensatory and punitive damages, as well as "all forms of back pay, retroactive promotion, front pay in lieu of reinstatement, pre-judgment interest, costs, and reasonable attorney's fees (including expert fees) in amounts to be determined at trial." *Id.* Plaintiff also seeks "such other legal or equitable remedies, including, but not limited to, relocation expenses, job search expenses, and post-judgment interest as shall be necessary and proper to eliminate the discrimination." *Id.* Additionally, Plaintiff seeks a permanent injunction enjoining Defendants "from engaging in any employment practice which discriminates on the basis of sex and/or race." *Id.*

4

On March 15, 2004, Plaintiff filed a Motion to Amend her Complaint (Docket Entry No. 4), that was granted in an Order by Judge Trauger on March 22, 2004 (Docket Entry No. 7).[2] Plaintiff's Amended Complaint was subsequently filed. Docket Entry No. 8. Plaintiff's Amended Complaint reiterated the averments of her initial Complaint, terminated Bridgestone America's Holding, Inc. as a Defendant, and added Bridgestone / Firestone North American Tire, LLC as a Defendant. *Id.*

On May 19, 2004, Defendant USW filed its Answer, denying liability and contending that Plaintiff's claims are time-barred. Docket Entry No. 28. Defendant USW further asserts that Plaintiff's claims are barred by her failure to exhaust the contractual remedies as contained in the Collective Bargaining Agreement to which she was subject as an employee of Defendant Bridgestone, and by her failure to exhaust the administrative remedies in the Constitution of the USW which remedies are granted to her through her membership in USW and Local 1055L. *Id.*

On May 21, 2004, Defendant Bridgestone filed its Answer, denying liability and asserting, *inter alia*, that Plaintiff's claims must be dismissed because they are time-barred, and because she has failed to exhaust her administrative remedies. Docket Entry No. 31. Defendant Bridgestone further contends that each employment action taken by it with regard to Plaintiff was taken for a legitimate reason. *Id.*

On August 6, 2004, Defendant Local filed its Answer, denying liability and asserting that Plaintiff has failed to state a claim against it, that Plaintiff's claims are time-barred and barred by the doctrine of laches, and that Plaintiff's claims are further barred by her failure to exhaust

---

[2]On May 6, 2004, Judge Trauger recused herself and this case was reassigned to Judge Campbell. Docket Entry No. 22.

the contractual remedies contained in the Collective Bargaining Agreement to which she was subject as an employee of Defendant Bridgestone. Docket Entry No. 47.

Defendant Bridgestone filed the pending Motion for Summary Judgment and accompanying submissions on April 29, 2005. Docket Entry Nos. 62-67. Defendant Bridgestone maintains that, "Plaintiff's only cause of action against Bridgestone is for race discrimination ... [and] [o]n the undisputed facts, Plaintiff can neither establish a *prima facie* case of race discrimination nor demonstrate that any reason for any decision Bridgestone made with respect to her employment was a pretext for race discrimination." Docket Entry No. 62. Accordingly, Defendant argues that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. *Id.*

Plaintiff filed her Response to Defendant Bridgestone's Motion for Summary Judgment and accompanying submissions on May 26, 2005. Docket Entry Nos. 71-75. Plaintiff argues that she has established a *prima facie* case, that "the evidence shows that [D]efendant Bridgestone has not articulated a legitimate nondiscriminatory reason for its actions toward her," and that "even if the Court concludes that [D]efendant Bridgestone has articulated a legitimate nondiscriminatory reason for its actions, the evidence adequately supports an inference that [D]efendant Bridgestone's reasons are a pretext for intentional discrimination." Docket Entry No. 71.

Defendant Bridgestone has filed a Reply to Plaintiff's Response (Docket Entry No. 77), as well as a response to Plaintiff's additionally asserted undisputed facts (Docket Entry No. 78). Defendant Bridgestone's Reply contends that, "Plaintiff cannot establish a *prima facie* case of race discrimination because she cannot show that she was replaced by a person of a different

race or was treated less favorably than a similarly situated employee of a different race." Docket Entry No. 77. Defendant Bridgestone further argues that it "had a legitimate, non-discriminatory reason for offering Plaintiff the Condition of Employment to which she agreed - her admitted role in a workplace altercation," and that, "Plaintiff has no evidence of pretext." *Id.*

Defendants Local and USW filed their pending Motion for Summary Judgment and accompanying submissions on June 1, 2005. Docket Entry Nos. 80-82. Defendants Local and USW expressly "adopt[] Defendant Bridgestone / Firestone North American Tire LLC's brief and supporting documents." Docket Entry No. 81. Additionally, Defendant USW asserts that, because Plaintiff filed EEOC charges against Defendant Local only, Defendant USW is entitled to a judgment as a matter of law with regard to Plaintiff's Title VII claims against it since Plaintiff has failed to meet the statutory prerequisites for filing a Title VII claim. Docket Entry No. 80. With regard to Plaintiff's claim under 42 U.S.C. § 1981, Defendant USW argues that Plaintiff has failed to allege any conduct on its part that would subject it to liability, and that *respondeat superior* alone does not form an appropriate basis for the imposition of liability. *Id.* Accordingly, Defendant USW maintains that Plaintiff cannot sustain her claims against it, and that it is entitled to a judgment as a matter of law. *Id.* Defendant Local asserts that Plaintiff has failed to adduce any evidence to support her complaint that it violated her rights under Title VII and 42 U.S.C. § 1981 by failing to arbitrate her grievance, and further asserts that Plaintiff has failed establish each element of her *prima facie* case under Title VII. *Id.* Accordingly, Defendant Local argues that it is entitled to a judgment as a matter of law. *Id.*

Plaintiff filed her Response to Defendants Local and USW's Motion for Summary Judgment and accompanying submissions on June 24, 2005. Docket Entry Nos. 86-91. Plaintiff

7

argues that she has established a *prima facie* case, that "the evidence reveals that the reasons articulated by [Defendants Local and USW] for their actions lack a basis in fact, are not the true reasons, or do not adequately explain their actions," and that consequently, "a fact finder may reasonably infer that the reasons of [Defendants] are a pretext for intentional discrimination." Docket Entry No. 86.

Defendants Local and USW have filed a Reply to Plaintiff's Response (Docket Entry No. 94), as well as a response to Plaintiff's additionally asserted undisputed facts (Docket Entry No. 95). Defendants' Reply contends, *inter alia*, that Plaintiff has failed to demonstrate that their actions were "arbitrary, capricious, retaliatory, or discriminatory," or that any "action was taken against the Plaintiff due to the Union's racial and sexist animus toward her." Docket Entry No. 94. Defendant Local asserts that it had legitimate, non-discriminatory reasons which forced it to withdraw Plaintiff's grievance from arbitration, with which "no reasonable juror" could disagree. *Id.* Defendant USW additionally contends that it cannot be held liable for the acts of Defendant Local, and that "Plaintiff has failed to produce any evidence that [Defendant USW] participated in, ratified, instigated, encouraged, condoned, or directed any act of discrimination or retaliation against the Plaintiff." *Id.*

It is important to note that Plaintiff did not file EEOC charges against either Defendant Bridgestone or Defendant USW. Plaintiff's claims against Defendant Bridgestone are based solely upon 42 U.S.C. § 1981, and apparently relate primarily to the "conditional" she was given in 2000. Her theory apparently is that the "conditional" she was given had an unlimited duration, which was discriminatory because "conditionals" given to others were of limited duration. Plaintiff's claims against Defendant Local are based both upon 42 U.S.C. § 1981 and

8

Title VII, and apparently relate to Plaintiff's claim that Defendant Local did not appropriately pursue a grievance concerning her termination in 2002. Plaintiff's claims against Defendant USW are based upon 42 U.S.C. § 1981, and apparently are based upon an argument that USW is vicariously liable for the actions of Defendant Local. Plaintiff also attempts to assert Title VII claims against USW, even though she did not file an EEOC charge against Defendant USW.

For the reasons set forth below, the undersigned concludes that, viewing all the facts and inferences in favor of the nonmoving party, Plaintiff cannot sustain her claims. Accordingly, the undersigned recommends that Defendants' Motions For Summary Judgment be GRANTED, and that this action be DISMISSED.

## II. Facts[3]

Plaintiff, an African-American female, was employed by Defendant Bridgestone at its LaVergne, Tennessee tire manufacturing plant from August 1995 until November 2003. Docket Entry No. 65, Tab 2, Deposition of Ms. Celestine March-Carney ("Plaintiff's Dep."), pp. 6, 35.[4] At all times relevant to the case at bar, Plaintiff was a member of Defendant Local and Defendant USW, and Plaintiff's employment was governed by the collective bargaining agreement in place between Defendant Bridgestone and Defendant Local. *Id.*, pp. 6-7, Ex. 12.

**A. Undisputed Facts Pertaining to the Incident of February 29, 2000**

On February 29, 2000, Mr. Chris Gardner, Plaintiff's then-estranged boyfriend against

---

[3] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

[4] Excerpts of Plaintiff's Deposition (and the accompanying exhibits) are also found as an attachment to Docket Entry No. 82. For purposes of clarity, all citations to exhibit numbers associated with Plaintiff's Deposition refer to the exhibit numbers as found in the copy of Plaintiff's Deposition located in Docket Entry No. 65.

whom she had an Order of Protection, approached Plaintiff at her workstation and a physical altercation ensued. Plaintiff's Dep., pp. 9-12, Ex. 3. That same day, Plaintiff prepared a written statement regarding the altercation, which she acknowledged was an accurate representation, and which described the events of February 29, 2000 as follows: Plaintiff cancelled a planned lunch with Mr. Gardner because of an incident that had occurred earlier that day; Mr. Gardner attempted to apologize to Plaintiff for that earlier incident and asked Plaintiff if she "still wanted to go to lunch to make amends"; Plaintiff rejected Mr. Gardner's apology and invitation; Mr. Gardner became angry; Plaintiff also became angry; they "both started calling each other names"; Plaintiff asked Mr. Gardner to leave and returned to her workstation, believing that Mr. Gardner had left; Mr. Gardner instead approached Plaintiff and said, "say what you were saying now, b _ _ _ _ ";[5] Plaintiff responded with a "humph"; Mr. Gardner then struck Plaintiff in her "lip area"; and Plaintiff threw soda on him. *Id.*, Ex. 3.

On March 2, 2000, Mr. Roger Smith, Labor Relations Manager, met with Plaintiff and her Union representatives to discuss her role in the February 29, 2000 incident. Plaintiff's Dep., pp. 46-48; Docket Entry No. 66, Declaration of Mr. Roger Smith ("Smith Dec."), ¶ 4. Since May 25, 1994, Defendant Bridgestone has had a clear, posted policy against workplace altercations and provocation of altercations which states that, "fighting, wrestling, and/or provocation of such acts between employees while on company premises will result in termination." Plaintiff's Dep., Ex. 2; Smith Dec., ¶ 3, Ex. 1. Mr. Smith issued Plaintiff a contractually-required disciplinary warning of two days' notice of Defendant Bridgestone's

---

[5]The blanks in this word appear in the original handwritten statement signed by Plaintiff. Plaintiff's Dep., Ex. 3.

intent to terminate her employment for violation of the fighting / provocation policy.  Smith Dec., ¶ 4.

On March 6, 2000, Plaintiff and her Union representatives again met with Mr. Smith, who, instead of discharging Plaintiff for violating the fighting / provocation policy, offered her a "Condition of Employment," which Plaintiff accepted.  Plaintiff's Dep., pp. 48-49, Ex. 1; Smith Dec. ¶ 5.   A "Condition of Employment" imposes certain conditions of continued employment to which the employee agrees in lieu of immediate termination.  Smith Dec., ¶ 5.  The specific terms and conditions are negotiated between Defendant Bridgestone, the employee, and Defendant Local.  *Id.*  "Conditions of Employment" typically fall into two categories: (1) those in which the primary condition(s) remain in effect for the duration of the employee's employment; and (2) those that are expressly and entirely limited in time, usually for one year.  Smith Dec., ¶ 10.  The duration of the "Condition of Employment" offered is "primarily driven by the nature and severity of the infraction."  *Id.*  Generally, an employee who commits an "immediately terminable" offense is offered a "Condition of Employment" that does not expire, while an employee who has reached the termination step of a progressive discipline policy for a "more minor" offense is offered a "Condition of Employment" with a limited duration.  *Id.*, ¶¶ 11, 12.

Plaintiff, Defendant Local, and Defendant Bridgestone agreed upon and signed Plaintiff's negotiated "Condition of Employment."  Plaintiff's Dep., Ex. 1.  Plaintiff expressly agreed to the following conditions governing her continued employment:

    1.    Any violation of Company Policy that would normally result in a Counseling IV or termination will result in my immediate termination.

    2.    I understand the time off I have incurred will remain

11

                        unpaid.

3.       Any verbal or physical altercation will result in my termination.

*Id.*, Ex. 1.  Plaintiff's agreed "Condition of Employment" did not contain a time limit or specify an expiration date.  *Id.*

## B.  Undisputed Facts Pertaining to the Incident of November 8, 2002 and Plaintiff's Subsequent Termination

In order to enter the LaVergne plant premises, visitors and employees must pass through a security gate adjacent to a guard station.[6]  Plaintiff's Dep., p. 18.  On November 8, 2002, at approximately 10:00 p.m., Plaintiff arrived at Defendant Bridgestone's LaVergne plant security gate in her vehicle, with three children.  *Id.*, pp. 61, 176-177.  Since at least 1994, Defendant Bridgestone has had a posted policy prohibiting children in the plant for safety reasons.  *Id.*, p. 61, Ex. 8; Docket Entry No. 67, Declaration of Ms. Donice Cortez ("Cortez Dec."), ¶ 8, Ex. 3. Plaintiff attempted to "bypass" the security guard on duty and "swipe" her employee badge on a monitor to lift the security gate.  Plaintiff's Dep., p. 18.  Plaintiff was arriving in the middle of a shift, late at night, with children in the car, and the security guard stationed at the gate, Mr. Larry Earls, stopped Plaintiff and inquired about where she was going.  *Id.*, p. 19; Cortez Dec., ¶ 6. Plaintiff was not scheduled to work, and she told Mr. Earls that she had come to bring food to Mr. Antonio Carney, who was working the night shift.  *Id.*, pp. 17-18, Ex. 13.  At the time of the incident, Mr. Carney was Plaintiff's boyfriend.  Plaintiff's Dep., pp. 17-18.

Defendant Bridgestone has a posted policy that employees who arrive at the plant for any

_____

[6]The security guards at the LaVergne plant are not Defendant Bridgestone employees; they are employees of a contracted security company.  Plaintiff's Dep., pp. 58, 177; Docket Entry No. 67, Declaration of Ms. Donice Cortez ("Cortez Dec."), ¶ 4.

reason other than reporting for work are required to park in the overflow or main parking lot. *Id.*, pp. 60-61, Ex. 7; Cortez Dec., ¶ 8, Ex. 4. Because Plaintiff was not scheduled to work, and because she had young children with her, Mr. Earls instructed Plaintiff that she was required to park in an overflow parking lot located next to the security gate. Cortez Dec., Ex. 1.[7]

Mr. Earls offered to telephone Mr. Carney and have him come to the gate to pick up the food. Cortez Dec., Ex. 1; Plaintiff's Dep., Ex. 13. Plaintiff became "very upset," refused to park in the overflow lot, and insisted that she was "going to the back no matter what [they] said," and that, "they would not stop her from going to the back and inside."[8] Cortez Dec., Ex. 1.

Mr. Earls called another security guard, Mr. Gary Wood, for assistance. *Id.*, Ex. 1; Plaintiff's Dep., Ex. 13. Upon arriving, Mr. Wood again explained the policies and issues to Plaintiff, but Plaintiff became "very upset and belligerent" towards him, and "wouldn't let [him] speak; [s]he kept insisting that she was an employee and that she was going to the back lot." Cortez Dec., Ex. 2.[9] Plaintiff became "more irate" and told the guards that she was "going back there no matter what" they said or did. *Id.*, Ex. 1.

When Mr. Wood realized that Plaintiff was not going to cooperate and that the situation was escalating into a potential security problem, he directed Plaintiff to leave the property. Cortez Dec., Ex. 2. Plaintiff responded that "she was not going to leave and all she had to do was use her card and go in and do what she wanted to." *Id.* Mr. Wood twice asked Plaintiff to

---

[7]A written report made by Mr. Earls is attached as Exhibit 1 to the Cortez Declaration (Docket Entry No. 67).

[8]The back lot to which Plaintiff insisted upon going was neither the main parking lot nor an overflow lot. Plaintiff's Dep., p. 61.

[9]A written report made by Mr. Wood is attached as Exhibit 2 to the Cortez Declaration (Docket Entry No. 67).

13

surrender her company issued identification card, and she twice refused. *Id.* Mr. Wood again instructed Plaintiff to leave the property; again Plaintiff refused. *Id.* Mr. Wood approached Plaintiff's car and once again instructed her to leave the premises, at which time Plaintiff complied, but yelled, "You fat motherfucker!" *Id.*, Exs. 1, 2. Plaintiff then sped away. *Id.*

Defendant Bridgestone has, and had in 2002, a posted policy against demeaning and abusive language, which makes clear that suspension or discharge may result from a violation. Cortez Dec., ¶ 8, Ex. 5; Plaintiff's Dep., pp. 60-61, Ex. 9.

On November 13, 2002, accompanied by several Union representatives, Plaintiff met with Ms. Donice Cortez, Labor Relations Specialist, to discuss the November 8, 2002 incident. Plaintiff's Dep., pp. 58-64, 92-93, 143-146. Ms. Cortez asked Plaintiff to explain "what happened" at the gate, and Plaintiff recounted her version of events. *Id.*, p. 92; Cortez Dec., ¶ 10. With some minor variations in characterization, Plaintiff's version of events was consistent with the security guards' descriptions. Cortez Dec., ¶ 10. Plaintiff admitted that she refused to park in the overflow lot as instructed, and said that she had refused because she "wasn't aware of a policy that was in place that said [she] had to do that." Plaintiff's Dep., p. 177. Plaintiff acknowledged that her confrontation with the security guards became "heated" after she was instructed to leave because she felt that one of the guards was talking to her "incorrectly," so she "asked him not to talk crazy to [her]." *Id.*, pp. 22-23, 176. Plaintiff told Mr. Wood, "your attitude has been funky since you came out and you will not tell me what to do." *Id.*, Ex. 13. Plaintiff and Mr. Wood then "went back and forth for a minute or so." *Id.* Plaintiff admittedly refused to give the security guards her identification badge as requested (*id.*, p. 175), and acknowledged that she remained at the security gate for approximately ten minutes before

14

leaving (*id.*, p. 21).

Based upon the reports of the security guards and Plaintiff's admitted conduct, Ms. Cortez determined that Plaintiff should be discharged for violating her Condition of Employment, in which Plaintiff had agreed that, "[a]ny verbal or physical altercation will result in [her] termination." Cortez Dec., ¶ 13. At the time of her discharge, Plaintiff was otherwise qualified for her job position or satisfactorily met her job requirements. *See* Docket Entry No. 78, Defendant Bridgestone's Reply to Plaintiff's asserted additional facts.

Ms. Cortez met with Plaintiff and her Union representatives again on November 15, 2002 to inform Plaintiff that she had been discharged. Cortez Dec., ¶ 13; Plaintiff's Dep., pp. 68-69, 80. No one was hired to replace Plaintiff. Cortez Dec., ¶ 14. The trucking position that Plaintiff had held at the time of her termination was "not individual or unique," as several employees held that position at any given time. *Id.* Defendant Bridgestone does not have a say in which employees will bid successfully under the collective bargaining agreement into a trucking or any similar bargaining unit classification. *Id.*

Plaintiff filed a grievance regarding her termination. Plaintiff's Dep., p. 6; Plaintiff's Aff., ¶15. Defendant Local's civil rights committee investigated Plaintiff's grievance. Docket Entry No. 91, Plaintiff's Responses to Defendant Bridgestone's Request for Production, p. 0071. Mr. Larry Pierce, Vice President, and Mr. Jim Buckley, Sub-District Director, met with the grievance committee concerning Plaintiff's arbitration prior to the committee's decision to withdraw from arbitration. *Id.*, pp. 0082, 0094. After deciding not to arbitrate Plaintiff's grievance, Defendant Local did not pursue any post-discharge grievance on behalf of Plaintiff. Docket Entry No. 89, Affidavit of Ms. Celestine March-Carney ("Plaintiff's Aff."), ¶ 5.

15

Defendant Local is a "subordinate body" of Defendant USW. Docket Entry No. 91, Plaintiff's Responses to Defendant Bridgestone's Request for Production, p. 0069. On November 21, 2002, Plaintiff sent an email to Defendant USW complaining about Defendant Local's response to her discharge grievance. Docket Entry No. 91, Plaintiff's Responses to Defendant Bridgestone's Request for Production, pp. 0099-0100.

On September 15, 2003, Plaintiff filed an EEOC Charge of Discrimination against Defendant Local, stating in part, "I believe the union failed to represent me, and retaliated against me for contacting national about their lack of representation, because of my sex, female, and race, Black, in violation of Title VII." Attachment to Docket Entry No. 82, Ex. 2, Plaintiff's EEOC Charge of Discrimination; Docket Entry No. 91, Defendant Local's Response to Plaintiff's First Request for Production, No. 4, p. 000417. On November 17, 2003, Plaintiff's "Dismissal and Notice of Rights" Letter was issued. *Id.*

**C. Undisputed Facts Pertaining to Plaintiff's "Comparables"**

As will be discussed below, in order to establish a *prima facie* case under Title VII, Plaintiff must show, in part, that she was treated less favorably than a similarly situated individual outside the protected class. It is, therefore, necessary to discuss the circumstances of the people Plaintiff claims were treated more favorably than was she.

Plaintiff initially testified in her deposition that she was treated differently than three Bridgestone employees: Letricia Springer, Bruce Crowder, and Donovan Lack. March Dep. at 51-52, 73-74, 100-01, 116-18. She stated that her information was based upon antecdotal information concerning these employees.

Defendant later submitted an Interrogatory to Plaintiff concerning "comparables," and

16

Plaintiff responded as follows:

      11.  Identify every employee of a different race whom you contend Bridgestone treated

more favorably than you, and for each list: (a) how he/she was treated more favorably; (b) when;

and (c) by whom.

      **ANSWER:**

Donovan Lack.
A.     Mr. Lack had a history of disciplinary violations prior to receiving a Condition of Employment in 2003. I believe that Mr. Lack violated his Condition of Employment but was not terminated.
B.     October, 2003
C.     Missy Cortez

Greg Estes
A.     I believe Mr. Estes received a Condition of Employment in 2004, violated his Condition, and was offered a new Condition after violating the one that was already in effect.
B.     2003
C.     Missy Cortez

Brett Selph
A.     Mr. Selph is a Caucasian male who received a "Condition of Employment" on April 2, 2002 for failing to follow work standards, where his conditional was limited to one year beginning March 28, 2003
B.     April 2, 2002
C.     Roger Smith

Kevin Hunt
A.     Mr. Hunt is a Caucasian male who received an "Offer of Conditional of Employment" on June 12, 2002 regarding violation of Bridgestone's substance abuse policy, where his conditional was limited to one year beginning June 12, 2003.
B.     June 12, 2002
C.     Missy Cortez

William Wolford
A.     Mr. Hunt is a Caucasian male who received a Condition of Employment on July 22, 2002 regarding violation of Bridgestone's substance abuse policy, where his conditional was limited to one year.
B.     July 22, 2002

C.    Roger Smith

Marvin Hassell
A.    Mr. Hunt is a Caucasian male who received a Condition of Employment on
       August 2, 2002 regarding sleeping while on company property, where his
       conditional was limited to one year.
B.    August 2, 2002
C.    Roger Smith

**1.  Ms. Letricia Springer**

Ms. Springer is African-American.  March Dep., p. 73-74.

**2.  Mr. Bruce Crowder**

Mr. Bruce Crowder is a non-African American male.  Docket Entry No. 91, Defendant

Bridgestone's Responses to Plaintiff's Request for Production, p. 0101.  When Mr. Crowder

received a "Condition of Employment," he was a twenty-eight year employee.[10]  Smith Dec., ¶

16.  Mr. Crowder was issued a "Condition of Employment" as a result of accumulating

progressive discipline for excessive lunches and breaks and failure to meet working standards.

*Id.*

Mr. Crowder violated his "Condition of Employment" approximately eight months after

receiving it, when, in August 2001, he used demeaning and/or abusive language in addressing a

Bridgestone management employee.  That management employee had confronted Mr. Crowder

with numerical data showing his failure to properly perform final inspection of tires.  Smith

Dec., ¶ 16.  Mr. Crowder's conduct violated Defendant Bridgestone's workplace policy and was

punishable by suspension and/or discharge.  Attachment to Docket Entry No. 82, Ex. 9.

Defendant Local arbitrated Mr. Crowder's discharge.  Attachment to Docket Entry No.

---

[10]At the time Plaintiff received her "Condition of Employment," she was a five-year
employee.  Plaintiff's Dep., 111-112, 149, Ex. 18; Smith Dec., ¶ 16.

18

82, Ex. 5.

As will be discussed below, on November 17, 2002, Defendant Local learned that its efforts to arbitrate Mr. Crowder's discharge based on the violation of his "Condition of Employment" were unsuccessful. Docket Entry No. 91, Plaintiff's Responses to Defendant Bridgestone's Request for Production, pp. 0085-0093.

### 3. Mr. Donovan Lack

Mr. Donovan Lack was issued a "Condition of Employment" in 2003 because of insubordination. Cortez Dec., ¶ 15. Mr. Lack's "Condition of Employment" provided that any incident of insubordination, demeaning or abusive language, or failure to follow instructions would result in his termination.[11]  *Id.*, Ex. 6. Mr. Lack's "Condition of Employment" contained additional restrictions that were in place for one year, including one triggering his immediate termination for more minor offenses such as extended lunches or breaks or being out of his work area. *Id.*

### 4. Mr. Greg Estes

Mr. Greg Estes was initially issued an unlimited "Condition of Employment" for violating Defendant Bridgestone's excessive lunches and breaks progressive discipline policy. Cortez Dec., ¶ 16. Mr. Estes violated that policy again almost two years later when he took a bathroom break that was four minutes too long, and Ms. Cortez discharged him. *Id.* Upon additional reflection and discussions with Mr. Estes and Defendant Local, and given the "extremely minimal nature" of the infraction, Ms. Cortez decided to reinstate him with a

---

[11]Plaintiff's "Condition of Employment" was also triggered by a verbal or physical altercation, or a serious incident that would, standing alone, resulting in a "Counseling IV." Plaintiff's Dep., Ex. 1.

19

suspension and a new "Condition of Employment."  *Id.*

## III.  Analysis

### A.  Introduction

As has been discussed above, it is important to note that Plaintiff did not file EEOC charges against either Defendant Bridgestone or Defendant USW.  Plaintiff's claims against Defendant Bridgestone are based solely upon 42 U.S.C. § 1981, and apparently relate primarily to the "conditional" she was given in 2000.  Her theory apparently is that the "conditional" she was given had an unlimited duration, which was discriminatory because "conditionals" given to others were of limited duration.  Plaintiff's claims against Defendant Local are based both upon 42 U.S.C. § 1981 and Title VII, and apparently relate to Plaintiff's claim that Defendant Local did not appropriately pursue a grievance concerning her termination in 2002.  Plaintiff's claims against Defendant USW are based upon 42 U.S.C. § 1981, and apparently are based upon an argument that USW is vicariously liable for the actions of Defendant Local.  Plaintiff also attempts to  assert Title VII claims against USW, even though she did not file an EEOC charge against Defendant USW.

### B.  Summary Judgment Standards

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

20

In order to prevail on a Motion for Summary Judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C.  42 U.S.C. § 2000e et seq.  - Title VII of the Civil Rights Act of 1964**

**1.  Generally**

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--

21

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

In order to establish a *prima facie* case of discrimination, a plaintiff must demonstrate that,

> 1. He or she is a member of a protected class;
>
> 2. He or she was qualified for the job and performed it satisfactorily;
>
> 3. Despite his or her qualifications and performance, he or she suffered an adverse employment action; and
>
> 4. He or she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside the protected class.

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000).

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination. *Johnson*, 215 F.3d at 572, *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the

employer terminated him or her because of his or her protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination. *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994), *citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a *prima facie* case of discrimination. If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. If the defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981). The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action. *Id.* "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

### 2.  Retaliation

An employer may not retaliate against an employee because he or she has opposed an unlawful employment practice, or because he or she has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing.  42 U.S.C. § 2000e-3(a).

A *prima facie* case of retaliation requires Plaintiff to demonstrate that:

1. he or she engaged in activity protected under Title VII;

2. Defendant knew that Plaintiff was exercising the protected rights;

3. Plaintiff suffered an adverse employment action or was subjected to severe or pervasive retaliatory harassment by a supervisor; and

4. there was a causal connection between the protected activity and the adverse employment action or harassment.

*Little v. BP Exploration and Oil Co.,* 265 F.3d 357, 363 (6th Cir. 2001); *Morris v. Oldham Co. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Retaliation claims are likewise evaluated under the *McDonnell Douglas-Burdine* tripartite test discussed above.  *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 862 (6th Cir. 1997).

**D.  42 U.S.C. § 1981(a)  - The Civil Rights Act of 1866**

42 U.S.C. § 1981 provides, in pertinent part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Race discrimination claims brought pursuant to 42 U.S.C. § 1981 are subject to the same analysis as Title VII claims, discussed above (*Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 464

24

(6th Cir. 2001)), and are further analyzed under the *McDonnell Douglas-Burdine* tripartite test, also discussed above (*Hoskins v. Oakland County Sheriff's Dept.,* 227 F.3d 719, 731 (6th Cir. 2000)). *See also Johnson*, 215 F.3d at 572-78.

## E.  The Case at Bar

### 1.  Defendant Bridgestone

Plaintiff's sole cause of action against Defendant Bridgestone is for race discrimination pursuant to 42 U.S.C. § 1981.  Docket Entry No. 8, Plaintiff's Amended Complaint, ¶¶ 52-55.

As has been noted, in order to establish a *prima facie* case of race discrimination under 42 U.S.C. § 1981, Plaintiff must establish that, (1) she is a member of a protected class; (2) she was qualified for the job and performed it satisfactorily; (3) despite her qualifications and performance, she suffered an adverse employment action; and (4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside the protected class.  *Johnson*, 215 F.3d at 572-73.

Plaintiff in the case at bar is an African-American female; accordingly it is undisputed that she is a member of a recognized protected class.  It is also undisputed that Plaintiff was qualified for her job and that she performed it satisfactorily, and that Plaintiff's termination was an adverse employment action.  It is further undisputed that no one was hired to replace Plaintiff. Because Plaintiff was not replaced by anyone, much less by a person outside the protected class, she must demonstrate that she was treated less favorably than a similarly situated individual outside the protected class.

In the Sixth Circuit, in order to be considered "similarly situated" in the disciplinary context, "the plaintiff must show that the 'comparables' are similarly-situated *in all respects.*"

*Noble v. Brinker Intern., Inc.,* 391 F.3d 715, 728-29, (6th Cir. 2004), *quoting Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992) (emphasis in original). Specifically, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar[, that is, 'nearly identical,'] in 'all of the *relevant* aspects.'" *Id., quoting Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998) (emphasis and brackets in original). Thus, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id., citing Mitchell,* 964 F.2d at 583.

Plaintiff claims "disparate treatment" because she was issued a "Condition of Employment" that was unlimited in its duration, while others were issued "Conditions of Employment" that were limited in duration to one year. *See* Docket Entry No. 72. As an initial matter, it is undisputed that the duration of the "Condition of Employment" offered is "primarily driven by the nature and severity of the infraction," and that, generally, an employee who has reached the termination step of a progressive discipline policy for a "more minor" offense is offered a "Condition of Employment" with a limited duration. Smith Dec., ¶¶ 10-12.

While it is true that Plaintiff received a "Condition of Employment" that was unlimited in duration and others received "Conditions of Employment" that were limited in duration to one year, Plaintiff has failed to establish that any of her "comparables" are "nearly identical" in "all of the relevant aspects" to herself. Significantly, none of the individuals with whom Plaintiff seeks comparison received "Conditions of Employment" for engaging in the same (or even similar) conduct as Plaintiff. Plaintiff was issued her "Condition of Employment" as a result of

26

her admitted role in a workplace altercation that violated Defendant Bridgestone's policy that, "fighting, wrestling, and/or provocation of such acts between employees while on company premises will result in termination."  Smith Dec., ¶¶ 3-5.

The facts concerning the "comparables" claimed by Plaintiff have been discussed above. Ms. Springer is African-American, and cannot be comparable.  Mr. Crowder was issued his "conditional" as a result of accumulating progressive discipline for excessive lunches and breaks and failure to meet working standards.  Mr. Lack was issued his "conditional" because of insubordination.  Mr. Estes was issued his "conditional" for violating Bridgestone's excessive lunches and breaks progressive discipline policy.  Mr. Selph was issued his "conditional" for failing to follow work standards.  Mr. Hunt was issued his "conditional" for violating Bridgestone's substance abuse policy.  Mr. Wolford was issued his "conditional" for violating Bridgestone's substance abuse policy.  Mr. Hassell was issued his "conditional" for sleeping while on company property.

Plaintiff has not proffered one "comparable" who received a "Condition of Employment" for violating the company policy against workplace altercations.  Accordingly, Plaintiff has failed to establish that she was treated less favorably than a similarly situated employee of a different race, and has failed to establish her *prima facie* claim of discrimination.  Defendant Bridgestone is, therefore, entitled to a judgment as a matter of law.

### 2.  Defendant Local

Plaintiff essentially alleges that, in failing to arbitrate her grievance, Defendant Local violated her rights under Title VII and 42 U.S.C. § 1981.  *See* Docket Entry No. 8, Plaintiff's

Amended Complaint. As discussed above, Plaintiff filed an EEOC Charge of Discrimination against Defendant Local on September 15, 2003, which stated in part, "I believe the union failed to represent me, and retaliated against me for contacting national about their lack of representation, because of my sex, female, and race, Black, in violation of Title VII." Attachment to Docket Entry No. 82, Ex. 2. Plaintiff's "Dismissal and Notice of Rights" Letter was issued on November 17, 2003. *Id.*

### a. Title VII

#### i. Discrimination

Plaintiff complains that, "They didn't grieve my arbitration. They didn't take my file to the arbitration." Plaintiff's Dep., p. 148.[12] Plaintiff contends, "My case wasn't heard on its [*sic*] merits. They based my case on somebody else's." *Id.*

When a Title VII violation is premised upon a union's failure to properly process an employees' grievance, the employee must demonstrate that, (1) the union violated its duty, and (2) the union was motivated by racial animus. *Vaca v. Sipes*, 386 U.S. 171 (1967). *See also, Farmer v. ARA Services, Inc.,* 660 F.2d 1096 (6th Cir. 1981). Although a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, the individual employee does not have an absolute right to have his or her grievance taken to arbitration. *Id.,* at 191. A union violates its duty by failing to properly process a grievance when its actions are "arbitrary, discriminatory, or in bad faith." *Id.*, at 190.

As discussed above, it is undisputed that Mr. Crowder is a non-African American male

---

[12]This portion of Plaintiff's Deposition is found as an Attachment to Docket Entry No. 82.

(Docket Entry No. 91, Defendant Bridgestone's Responses to Plaintiff's Request for Production, p. 0101), who, when he was a twenty-eight year employee, received a "Condition of Employment" as a result of accumulating progressive discipline for excessive lunches and breaks and failure to meet working standards (Smith Dec., ¶ 16). It is also undisputed that Mr. Crowder violated his "Condition of Employment" approximately eight months after receiving it (Smith Dec., ¶ 16), with conduct that violated Defendant Bridgestone's workplace policy and that was punishable by suspension and/or discharge (Attachment to Docket Entry No. 82, Ex. 9). It is further undisputed that Defendant Local arbitrated Mr. Crowder's discharge (Attachment to Docket Entry No. 82, Ex. 5), and that, on November 17, 2002, Defendant Local learned that its efforts to arbitrate Mr. Crowder's discharge based on the violation of his "Condition of Employment" were unsuccessful (Docket Entry No. 91, Plaintiff's Responses to Defendant Bridgestone's Request for Production, pp. 0085-0093).

Concerning Plaintiff, it is undisputed that Plaintiff is an African-American female, who, when she was a five year employee, received a "Condition of Employment" as a result of violating Defendant Bridgestone's policy against workplace altercations. *See* Smith Dec., ¶¶ 3-5, 16. It is also undisputed that Plaintiff violated the express terms of her "Condition of Employment" over two years after receiving it, and that she was discharged, on November 15, 2002, as a result. Cortez Dec., ¶ 13. It is further undisputed that Plaintiff filed a grievance regarding her termination (Plaintiff's Dep., p. 6; Plaintiff's Aff., ¶15); that Defendant Local's civil rights committee investigated Plaintiff's grievance (Docket Entry No. 91, Plaintiff's Responses to Defendant Bridgestone's Request for Production, p. 0071); that Defendant Local learned on November 17, 2002 that its efforts to arbitrate Mr. Crowder's discharge based on the

29

violation of his "Condition of Employment" were unsuccessful (*id.*, at 0085-0093); that Mr.

Pierce and Mr. Buckley met with the grievance committee concerning Plaintiff's arbitration prior

to the committee's decision to withdraw from arbitration (*id.*, at 0082, 0094); and that Defendant

Local ultimately decided not to arbitrate Plaintiff's grievance and did not pursue any post-

discharge grievance on behalf of Plaintiff (Plaintiff's Aff. ¶ 5).

       It is Defendant Local's prerogative to determine which grievances lack merit. *See Vaca*,

386 U.S. 171.  The evidence in the case at bar demonstrates, *inter alia*, that, based upon

Plaintiff's own admitted conduct, there was ample evidence to support Defendant Bridgestone's

decision to terminate Plaintiff; that Defendant Local's civil rights committee investigated

Plaintiff's grievance; that the failure of Mr. Crowder's arbitration served as a negative precedent

for arbitration on Plaintiff's behalf and reduced the probability of success in her arbitration; and

that, after considering the foregoing, Defendant Local ultimately decided not to arbitrate

Plaintiff's grievance because it did not believe that it would prevail.  Plaintiff has failed to

adduce evidence demonstrating that Defendant Local's decision not to arbitrate her grievance

was "arbitrary, discriminatory, or in bad faith."

       Moreover, Plaintiff has failed to adduce any evidence demonstrating that Defendant

Union's decision not to arbitrate her grievance was racially motivated.  Because Plaintiff has

failed to establish that Defendant Local's decision not to arbitrate her grievance was "arbitrary,

discriminatory, or in bad faith" and racially motivated, Plaintiff cannot sustain her claim for

discrimination against Defendant Local under Title VII, and Defendant Local is entitled to a

judgment as a matter of law with respect to these claims.

       *ii.  Retaliation*

Plaintiff additionally contends that Defendant Local unlawfully retaliated against her in violation of Title VII when she contacted Defendant USW to communicate her dissatisfaction with Defendant Local. *See* Attachment to Docket Entry No. 82, Ex. 2, Plaintiff's EEOC Charge of Discrimination. Plaintiff bases her retaliation claim upon a November 21, 2002 email that she wrote to Defendant USW, which states in its entirety as follows:

> My name is Celestine March, and I'm a member of LaVergne, Tn. Local 1055. As I write this email, I'm full of emotion. Just recently, I was terminated from Bridgestone/Firestone. The termination resulted from a conditional that I signed on March 6, 2000. At that time, I was told by Union representatives that this would be my best option. Also, at this time, I was under the impression that this conditional lasted only for a year. On November 8, 2002, I had a disagreement with the security guard upon entering the gates. The security officer reported me to HR and I believe [*sic*] nothing would have come from this but the two day suspension. Since, I had signed the conditional, I was terminated. Although, this is a very brief summary of what happened, *my complaint is that the Local union officials misrepresented the facts from the March 6, 2000 incident.* I'm upset and without a job and believe that there must be better leadership and representation among our local unions. When I confronted, the local with my concerns, their response was, "well, we are employees off the floor, just like you." This to me is an unacceptable response. Because if I'm entrusting them to represent me, I want the best they can give and not some lame excuse that they feel with [*sic*] pacify the situation. If possible, and I know that people there are busy, but I would like my incident to be investigated. I'm a single mom and I cannot afford to lose five to six months of work while I'm waiting for decisions to be made.
> Thank-you for you [*sic*] attention to this matter.
>
> Celestine March cc#1885
> Local Union 1055 LaVergne, Tennessee

Docket Entry No. 91, Plaintiff's Responses to Defendant Bridgestone's Request for Production, p. 0100 (emphasis added).

31

As has been noted, a *prima facie* case of retaliation requires Plaintiff to demonstrate that,
(1) she engaged in activity protected under Title VII; (2) Defendant knew that Plaintiff was
exercising the protected rights; (3) Plaintiff suffered an adverse employment action or was
subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a
causal connection between the protected activity and the adverse employment action or
harassment.  *Little,* 265 F.3d at 363; *Morris*, 201 F.3d 792.  Retaliation claims are evaluated
under the *McDonnell Douglas-Burdine* tripartite test discussed above.  *EEOC,* 104 F.3d at 862.

Although email can, in certain circumstances, constitute a protected activity under Title
VII,[13] Plaintiff's email does not.  Plaintiff's email specifically states, "my complaint is that the
Local union officials misrepresented the facts from the March 6, 2000 incident."
Although the email does not explain this complaint in detail, it is apparently related to Plaintiff's
theory that her "conditional" should not have been unlimited and that Defendant Local somehow
misled her about the duration of her "conditional."[14]

Thus, Plaintiff's email has nothing to do with Plaintiff's complaints concerning a
possible violation of Title VII or with race or sex discrimination by Defendant Local or
Bridgestone against her.  It plainly complains of something (misrepresentation) completely
unrelated to Title VII.  The email, therefore, is not an activity protected under Title VII and
Plaintiff cannot establish a *prima facie* case concerning retaliation.  Accordingly, Defendant

---

[13]*See, e.g., Reed v. Cracker Barrel Old Country Store, Inc.,* 133 F. Supp. 2d 1055, 1070
(M.D. Tenn. 2000); *Holden v. Owens-Illinois, Inc.,* 793 F.2d 745, 750 (6th Cir. 1986).

[14]  As has been discussed above, the "conditional" contained no time limitation
whatsoever.  It is extremely unclear, therefore, how Defendant Local could have misled Plaintiff
on this point.

Local is entitled to a judgment as a matter of law with respect to Plaintiff's claims of retaliation under Title VII.

### b. 42 U.S.C. § 1981

Plaintiff additionally argues that Defendant Local's failure to arbitrate her grievance also violated her rights under 42 U.S.C. § 1981. Docket Entry No. 8, Amended Complaint, ¶¶ 53, 54. As has been noted, race discrimination claims brought pursuant to 42 U.S.C. § 1981 are subject to the same analysis as Title VII claims, discussed above. *Wade,* 259 F.3d at 464. For the reasons discussed above, because Plaintiff cannot sustain her discrimination claim under Title VII against Defendant Local, she likewise cannot sustain her discrimination claim under 42 U.S.C. § 1981.

### 3. Defendant USW

### a. Title VII

As has been noted, Plaintiff alleges that Defendant USW also violated her rights under Title VII and 42 U.S.C. § 1981. Plaintiff, however, did not file an EEOC Charge of Discrimination against Defendant USW, as is a jurisdictional prerequisite for instituting an action under Title VII. The law is well-settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge. *See, e.g., Strouss v. Michigan Dept. of Corrections*, 250 F.3d 336, 342 (6th Cir. 2001); *Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 254 (6th Cir. 1998). Because Plaintiff did not file a Charge of Discrimination with the EEOC against Defendant USW, Plaintiff's Title VII claims

33

against it are barred, and Defendant USW is entitled to a judgment as a matter of law with respect to these claims.

Plaintiff additionally asserts "unlawful retaliation in violation of Title VII." Docket Entry No. 8, Plaintiff's Amended Complaint, Count II. Plaintiff's sole allegation against Defendant USW in this regard, however, is Plaintiff's contention that, "[p]rior to and/or upon contacting" Defendant USW, she "engaged in activity protected under Title VII." *Id.,* ¶ 57. As an initial matter, generally, retaliation claims based upon conduct that occurs after the filing of the EEOC charge can be reasonably expected to grow out of the charge (*see, e.g., Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 832-33 (6th Cir. 1999)), while retaliation claims based on conduct that occurred before the filing of the EEOC charge must be included in that charge (*see, e.g., Ang v. Proctor & Gamble Co.,* 932 F.2d 540, 547 (6th Cir. 1991)). Because Plaintiff did not file an EEOC charge against Defendant USW, no conduct can be reasonably expected to grow therefrom, and Plaintiff cannot sustain any derivative retaliation claims. Regardless, however, Plaintiff's email to Defendant USW does not constitute a protected activity under Title VII, and Plaintiff cannot establish the requisite elements of her retaliation claim. Accordingly, Defendant USW is entitled to a judgment as a matter of law.

### b. *42 U.S.C. § 1981*

With regard to Plaintiff's claims against Defendant USW under 42 U.S.C. § 1981, Plaintiff, in her Amended Complaint, does not aver any direct conduct on the part of Defendant USW, but rather, asserts that, because Defendant Local is an "agent" of Defendant DSW, "Defendant [DSW] is vicariously liable for unlawful acts and/or omissions of [D]efendant Local Union or is liable under the doctrine of respondeat superior." Docket Entry No. 8, Plaintiff's

34

Amended Complaint, ¶ 40.

As has been discussed, Defendant Local did not violate Plaintiff's rights under 42 U.S.C. § 1981. Accordingly, there were no "unlawful acts and/or omissions" of Defendant Local for which Defendant USW could be vicariously liable.[15] Plaintiff, therefore, cannot sustain her claim, and Defendant USW is entitled to a judgment as a matter of law.

## IV.  Conclusion

For the foregoing reasons, the undersigned concludes that, viewing all the facts and inferences in favor of the nonmoving party, Plaintiff cannot sustain her claims. Accordingly, the undersigned recommends that Defendants' Motions For Summary Judgment be GRANTED, and that this action be DISMISSED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[15]Moreover, in order to hold Defendant DSW liable, Plaintiff must adduce specific evidence that Defendant DSW "instigated, supported, ratified, or encouraged" Defendant Local's decision not to arbitrate Plaintiff's grievance, or that Defendant Local's decision not to arbitrate Plaintiff's grievance was done "in accordance with their fundamental agreement of association." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 410 (6th Cir. 1999). Plaintiff has failed to do so.

35

_____

E. CLIFTON  KNOWLES
United States Magistrate Judge

36